

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00436-CV

**IN THE INTEREST OF J.A.T.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA01842
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: December 23, 2024

AFFIRMED

This is an accelerated appeal from an order terminating the parental rights of appellant, J.G. ("Mother"), to her child, J.A.T.[1]  In her sole issue, Mother challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the child's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).  We affirm.

### BACKGROUND

On November 17, 2022, the Texas Department of Family and Protective Services (the "Department") filed a petition to terminate Mother's parental rights.  The trial court held a bench

---

[1] To protect the identity of the minor child in this appeal, we refer to the child and Mother by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

trial on March 28, June 6, and June 12, 2024. When trial began, J.A.T. was eight years old. After trial, the trial court signed an order, terminating Mother's parental rights to her child. The trial court found three statutory grounds for termination[2] and that termination was in J.A.T.'s best interest. The trial court also terminated parental rights as to J.A.T.'s presumed father. Only Mother appealed.

#### STANDARD OF REVIEW

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in the child's best interest. *See id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited

---

[2] The trial court found Mother constructively abandoned the child, failed to comply with the provision of a court order that specifically established the actions necessary for Mother to obtain the return of the child, and used a controlled substance in a manner that endangered the health or safety of the child and failed to complete a court-ordered substance abuse treatment program. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P).

in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## BEST INTEREST

In her sole issue, Mother challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in J.A.T.'s best interest. There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Texas Family Code section 263.307(b). *See id.* § 263.307(b).

Our best-interest analysis is guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *accord In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The Department is not required to prove each factor, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parent-child relationship

endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Our concern is whether the evidence, as a whole, is sufficient for the trial court to have formed a strong conviction or belief that termination of the parent-child relationship is in the best interest of the child. *Id.*

At trial, the Department's investigator testified that the Department received an initial referral on October 9, 2022, after J.A.T. was seen "home alone, opening the door and the home smelling of marijuana." Mother was drug tested a few days later, and her test results, which were admitted into evidence, show positive results for marijuana and hydrocodone.

Approximately a month later, the Department received a second referral. San Antonio Firefighter Anthony Fierro testified that, at 2:20 a.m. on November 11, 2022, he was called to a gas station. There, the service attendant alerted Fierro to a vehicle with its ignition on. Mother was sitting in the driver's seat with her head "stumped over." Fierro banged on the window to wake Mother up. Mother opened the window, and Fierro turned the ignition off. According to Fierro, Mother "was a little bit lethargic, kind of confused." "[S]he had pinpointed pupils that were fixed. There was no reaction to light." Fierro diagnosed that Mother was possibly high on opiates. Initially, Mother denied using drugs but eventually confessed to Fierro that she took hydrocodone, which she said she used for pain management due to chronic pain in her legs. J.A.T. was in the backseat asleep. He was seven years old at the time, and in a diaper. Mother explained to Fierro that J.A.T. was still potty training and that "he's on the spectrum."

Several days later, the Department's investigator met with Mother. According to the investigator, Mother had no recollection of events that occurred during the early morning of November 11, 2022. Mother was unable to provide a prescription for hydrocodone, and she denied the Department's request to initiate a safety plan. Mother told the investigator that J.A.T. "was autistic, semi-verbal, in pullups, and would stay home with her," and not attend school. A few

days later, the Department filed its petition, and the trial court authorized J.A.T.'s removal from Mother's care.

Mother's drug use was a focus at trial. Illegal drug use is relevant to multiple *Holley* factors, including the child's emotional and physical needs now and in the future, the emotional and physical danger to the child now and in the future, Mother's parental abilities, the stability of Mother's home, and the acts or omissions which may indicate an improper parent-child relationship. *See Holley*, 544 S.W.2d at 371–72; *In re J.A.D.*, No. 04-24-00292-CV, 2024 WL 4499195, at *8 (Tex. App.—San Antonio Oct. 16, 2024, no pet.) (mem. op.); *see also* TEX. FAM. CODE ANN. § 263.307(b)(8) (providing as relevant consideration "whether there is a history of substance abuse by the child's family or others who have access to the child's home"). "[A] parent's illegal drug use exposes a child to the possibility that the parent may be impaired or imprisoned." *In re R.W.*, No. 04-21-00025-CV, 2021 WL 2446208, at *3 (Tex. App.—San Antonio June 16, 2021, no pet.) (mem. op.) (citation and brackets omitted). In this case, the danger that J.A.T. would be left alone with his incapacitated Mother due to her drug use was realized prior to J.A.T.'s removal and reasonably could be expected again if Mother continued to use illegal drugs or opiates without a prescription. *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) ("A trier of fact may measure a parent's future conduct by his past conduct. . . .").

After J.A.T.'s removal, Mother drug tested regularly, and the results were admitted into evidence. The results show that Mother repeatedly tested positive for marijuana, and several tests show positive results for hydrocodone and oxycodone. A test conducted on April 26, 2024, shows positive results for cocaine, marijuana, and methamphetamine. The trial court directed Mother to take a drug test on the second day of trial, and the test showed positive results for oxycodone,

morphine, and marijuana. Mother admitted to her marijuana use, and she asserted that she was prescribed hydrocodone to manage pain. A doctor, who attended to Mother's knee from March 2023 to May 2024, testified that he prescribed her hydrocodone for her pain, but that he never prescribed oxycodone or any medication that would result in a positive test for cocaine or methamphetamine. The Department's substance use specialist testified that hydrocodone will not cause a positive test result for oxycodone. She further testified that she had reviewed the list of prescription drugs prescribed to Mother and none of the prescribed drugs would cause a positive test result for methamphetamine. Additionally, according to the specialist, Sudafed, which Mother suspected was the cause for the positive test result for methamphetamine, would not cause a positive result.

Although Mother denied using oxycodone, methamphetamine, morphine, and cocaine, the trial court was free to disbelieve Mother. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (recognizing appellate court defers to factfinder on witness credibility issues). "Mother's substance abuse, including during the course of the case, strongly suggests Mother's poor judgment and lack of parenting skills." *In re A.E.R.*, No. 04-24-00109-CV, 2024 WL 3588391, at *5 (Tex. App.—San Antonio July 31, 2024, no pet.) (mem. op.). Moreover, Mother showed little initiative to address her substance abuse. Mother was referred for drug recovery services after completing two drug assessments, but she denied having a drug problem and never completed such services. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future.").

Mother also did not take advantage of mental health services offered to her. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing courts may consider willingness and ability of child's family to seek out, accept, and complete counseling services and willingness and ability of child's family to effect positive environmental and personal changes within a reasonable period of time). Mother's psychiatric assessment, which was admitted into evidence, showed diagnoses for "Major Depressive Disorder, Severe Recurrent," "Generalized Anxiety Disorder with Panic Attacks, Moderate," "Posttraumatic Stress Disorder, Severe," and "Cannabis Use Disorder, Severe, Active." Mother's therapist testified that, in her initial assessment, she identified that Mother's trauma was a topic that should be addressed in counseling. However, at the next appointment with the therapist, Mother denied any need to address her trauma because she "[f]elt like she was in a fine place and had nothing that she felt like she needed to work on." According to the Department's caseworker, Mother never successfully completed counseling.

J.A.T. was diagnosed with autism and "borderline intellectual functioning disorder." Throughout the case, he had issues with anger. According to the Department's caseworker, after the child's visits with Mother, he would become "very destructive in the home and at school." For just over a month in 2024, J.A.T. refused to visit with Mother because, according to the child, Mother lied to him. During that period, according to the caseworker, J.A.T. did not exhibit destructive behavior.

For most of the case, J.A.T. was placed with his maternal grandparents. There, according to his grandfather, he became potty trained, took baths, fed himself, and learned to tie his shoes. The Department's investigator testified that she observed a parent-child visit, during which Mother spoon fed J.A.T. and demanded that he wear a pullup, although, at that time, J.A.T. fed himself and did not wear a pullup at his placement. *See id.* § 263.307(b)(12)(B), (F) (specifying as relevant

consideration whether child's family demonstrates adequate parenting skills, including providing "care, nurturance, and appropriate discipline consistent with the child's physical and psychological development" and "an understanding of the child's needs and capabilities"). Further, during that visit, Mother told J.A.T. that the Department's personnel "were all bad people." According to the investigator, Mother screamed at the Department's workers, which caused J.A.T. to scream also and become fearful.

J.A.T.'s grandparents wished to adopt J.A.T., and his grandfather testified they had the means to support him. *See Holley*, 544 S.W.2d at 372 (listing stability of home as factor); *see also In re G.V.*, No. 14-02-00604-CV, 2003 WL 21230176, at *5 (Tex. App.—Houston [14th Dist.] May 29, 2003, pet. denied) (mem. op.) (noting stability that proposed placement promises "weigh[s] heavily in the court's finding that termination is in the best interest of [child]"). Mother testified that she lived in an apartment; however, the previous year, she was evicted from her apartment and suffered a bout of homelessness. Mother could not explain, at trial, why she had been evicted.

Although the Department's caseworkers acknowledged a bond between Mother and J.A.T., "a child's love of his parent[] cannot compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life." *In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.); *see also In re J.W.*, 645 S.W.3d 726, 746 (Tex. 2022) ("The best-interest prong . . . is child-centered and focuses on the child's well-being, safety, and development.") (citation omitted).

After viewing all of the evidence in the light most favorable to the trial court's best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in J.A.T.'s best interest. *See In re J.F.C.*, 96 S.W.3d

at 266. We further conclude that any disputed evidence, viewed in light of the entire record, was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in J.A.T.'s best interest. *See id.* Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *see also In re C.H.*, 89 S.W.3d at 27 (recognizing *Holley* factors are not exhaustive, and not all *Holley* considerations must be proved).

## CONCLUSION

We affirm the trial court's order.

Rebeca C. Martinez, Chief Justice